Filed 12/11/20  P. v. Castro CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B304473 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA130990) |
| v. | |
| ANTONIO FRANCISCO CASTRO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Raul A. Sahagun, Judge.  Affirmed.

Janet Uson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey,

Senior Assistant Attorney General, Idan Ivri and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Antonio Francisco Castro appeals from the trial court's order denying his petition under Penal Code section 1170.95 (Section 1170.95) to vacate his conviction for first degree murder.  We affirmed his conviction in a prior, unpublished opinion.  (*People v. Castro* (Aug. 14, 2017, No. B262307) [nonpub. opn.] 2017 Cal.App.Unpub. LEXIS 5578.)  In his petition, Castro requested the appointment of counsel, and alleged he had been convicted under the felony murder rule or the natural and probable consequences doctrine.  In response, the People submitted the jury instructions given at Castro's trial, which omitted any instruction on the felony murder rule or the natural and probable consequences doctrine.  Without appointing counsel or allowing Castro time to file a reply, the trial court denied Castro's petition. The court stated that neither of the specified theories had been presented at his trial, and concluded that he had failed to make a prima facie showing of entitlement to relief.

On appeal, Castro contends the court erred by denying his petition without appointing counsel and allowing him to file a reply.  He neither disputes the authenticity of the jury instructions submitted by the People, nor suggests any

2

argument he might have made, with the assistance of counsel, in the face of the instructions.

We affirm. The jury instructions conclusively established that Castro could not make a prima facie showing of entitlement to relief under Section 1170.95. Accordingly, we need not decide whether the court erred by failing to appoint counsel or by failing to allow Castro the opportunity to file a reply, as any such error was harmless.

## FACTUAL BACKGROUND

### A. *Castro's Conviction*[1]

In October 2012, Shane Cook was found beaten to death in his kitchen. A medical examiner found that Cook had died from multiple blunt force trauma to the head, and that some of his injuries were consistent with being caused by a long, hard instrument (such as a plumbing pipe). The People charged Castro and a codefendant, Randy Daniel Ortiz, with Cook's murder, alleged that the crime was gang related, and alleged that each defendant personally used a deadly weapon in the commission of the crime. (Pen. Code, §§ 187, subd. (a), 186.22, subd. (b)(1)(C), 12022, subd. (b)(1).)

At trial, Alicia Doolan testified that she spent the day of Cook's death at his house with him and Ortiz. Ortiz argued with Cook about an iPad and phoned someone (later

---

[1] The facts in this subsection are taken from our prior opinion. (*People v. Castro*, *supra*, 2017 Cal.App.Unpub. LEXIS 5578, at *4-*9.)

3

identified as Castro) to pick him up. Ortiz was holding a piece of plumbing pipe during the argument, and there was a similar piece of pipe on the kitchen table.[2] Castro came to the house and asked Doolan to excuse the three men so he and Ortiz could speak to Cook. She went into the bathroom but emerged after she heard arguing. She saw the men fighting in the kitchen, and further saw Cook fall to his knee. She went into the bathroom again but emerged a few minutes later, and saw Cook on the floor of the kitchen, where Castro and Ortiz were still present. She saw blood. Ortiz demanded that she drive him and Castro elsewhere, and she complied. In the car, Ortiz asked Castro if Cook was still alive. Castro responded, "'He was still breathing but I cracked him pretty hard.'" Shortly thereafter, Doolan parted ways with the two men.

The jury convicted Castro of first degree murder and found true the gang and deadly weapon allegations. In a bifurcated trial, the trial court found true an allegation that Castro had one prior serious or violent conviction under the three strikes law. (Pen. Code, §§ 667, subds. (a)(1) & (b)-(i), 1170.12, subds. (a)-(d).) Castro was sentenced to a total term of 56 years to life.

---

[2]    Another witness testified that he unsuccessfully attempted to connect Cook's house to the city water supply the morning of the murder (presumably with plumbing pipes). The plumbing pipes described by Doolan were never found. No other weapons were recovered.

On appeal, we concluded, inter alia, that although the trial court erred by failing to instruct the jury on the elements of the deadly weapon enhancement, this error was harmless beyond a reasonable doubt with respect to Castro. (*People v. Castro*, *supra*, 2017 Cal.App.Unpub. LEXIS 5578, at *18.) We reasoned, in relevant part, "The physical evidence undisputedly showed that Cook was repeatedly hit on the head with one o[r] more objects consistent with Doolan's description of the pipes. . . . [T]he prosecutor argued that either Ortiz and Castro both wielded the pipes, or Castro hit Cook with both pipes. Importantly, the jury was not presented with a theory that Castro was at the scene but did not personally hit Cook. [¶] The jury's finding that both Ortiz and Castro were guilty of first degree murder indicates that it rejected the[ir] misidentification defense, placing them both at the scene of the crime. The jury's murder finding also shows the jury found either Ortiz or Castro, or both, delivered the fatal blow or blows, and by implication that one or both hit Cook; yet, a theory of accomplice liability was presented only as to Ortiz." (*Ibid.*) We affirmed Castro's judgment, as modified in manners irrelevant to this appeal. (*Id.* at *37.)

**B. *Castro's Petition***

On November 27, 2019, Castro filed a petition for resentencing pursuant to Section 1170.95. He requested that the court appoint counsel for him. As an exhibit, he submitted a jury instruction on first degree willful,

5

premeditated, and deliberate murder (CALCRIM No. 521). As another exhibit, he submitted two jury instructions on aiding and abetting. The first (CALCRIM No. 400) provided in relevant part, "A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator." The second (CALCRIM No. 401) provided in relevant part, "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime." Neither aiding and abetting instruction articulated the natural and probable consequences doctrine, which is the subject of different CALCRIM instructions, viz., CALCRIM Nos. 402 and 403.

On January 16, 2020, the People filed a response to Castro's petition, arguing Castro was ineligible for relief as a matter of law because the jury had not been instructed on the felony murder rule or the natural and probable consequences doctrine. As an exhibit, the People submitted the jury instructions given at Castro's trial, including duplicates of the three instructions Castro had submitted with his petition. First degree premeditated murder was the only theory of first degree murder on which the jury was instructed. The jury received no instruction on the felony

6

murder rule or the natural and probable consequences doctrine.

The next day (January 17, 2020), the trial court, without appointing counsel or holding a hearing, issued an order denying Castro's petition. The court stated, "The pertinent facts of the case, as set forth in the decision by the Court of Appeal, are as follows: . . . Petitioner and Co-Defendant beat the victim to death with blunt objects. The Petitioner was convicted of first degree murder. [¶] The People's theory of the case was that Petitioner and Co-Defendant beat the [v]ictim to death. Since it was unclear who administered the fatal blow, the [P]eople's theory was that the Petitioner either administered the fatal blow or was a direct aider and abettor to the killing. Neither [the] theory of natural and probable consequences nor [a theory of] felony murder was advanced." The court concluded, "Since [Castro] was not convicted under either the theory of natural and probable consequences or [a theory of] felony murder, [Castro] has failed to present a prima facie case for relief."

Castro timely appealed.

## DISCUSSION

Castro contends the trial court erred by denying his Section 1170.95 petition without appointing counsel and allowing him to file a reply.

7

## A. *Principles*

"Before Senate Bill No. 1437, the felony-murder rule and the natural and probable consequences doctrine were exceptions to the actual malice requirement [for murder liability]. The felony-murder rule made 'a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state.' . . . The natural and probable consequences doctrine made 'a person who aids and abets a confederate in the commission of a criminal act . . . liable not only for that crime (the target crime), but also for any other offense (nontarget crime) [including murder] committed by the confederate as a "natural and probable consequence" of the crime originally aided and abetted.'" (*People v. Johns* (2020) 50 Cal.App.5th 46, 57-58.) Senate Bill No. 1437 (SB 1437) amended Penal Code sections 188 and 189 to eliminate murder liability under the natural and probable consequences doctrine, and to narrow the felony murder rule. (See *People v. Johns*, *supra*, 50 Cal.App.5th 46, 58-59; Pen. Code, §§ 188, subd. (a)(3), 189, subd. (e); Stats. 2018, ch. 1015, §§ 2-3).

SB 1437 also enacted Section 1170.95. (See Stats. 2018, ch. 1015, § 4.) This section permits a defendant who was convicted of felony murder or murder under a natural and probable consequences theory, but who could not be convicted of murder following SB 1437's changes to the law, to petition the sentencing court to vacate the conviction. (Pen. Code, § 1170.95, subd. (a).) After ascertaining that the petition includes certain basic information, the court must

engage in a two-step process to determine if it should issue an order to show cause. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 327 (*Verdugo*), review granted March 18, 2020, S260493, citing Pen. Code, § 1170.95, subds. (b)(2), (c).) First, the court must "determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (Pen. Code, § 1170.95, subd. (c).) Second, if the court determines that the petitioner has made this initial prima facie showing, it must appoint counsel for the petitioner (if requested), receive the People's response to the petition, allow the petitioner to file a reply, and "determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo*, *supra*, at 330, rev.gr.) If the court determines the petitioner has made this second prima facie showing, it must issue an order to show cause. (Pen. Code, § 1170.95, subd. (c).) If the parties do not thereafter stipulate that the petitioner is entitled to relief, the court must hold a hearing and, if the prosecution fails to prove the petitioner's ineligibility for relief beyond a reasonable doubt, vacate the petitioner's murder conviction. (Pen. Code, § 1170.95, subd. (d).)

Many Court of Appeal decisions have held that in determining whether a Section 1170.95 petitioner has made a prima facie showing of entitlement to relief, the trial court may consider the record of conviction, including the jury instructions given at the petitioner's trial. (See, e.g., *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 (*Soto*), review

9

granted September 23, 2020, S263939; *Verdugo, supra*, 44 Cal.App.5th at 333, rev.gr.) This issue is currently under review by our Supreme Court. (*People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598.) Pending guidance from our Supreme Court, we join our sister courts in concluding that the trial court may consider the record of conviction in determining whether the petitioner has made a prima facie showing of entitlement to relief.

Error in depriving a defendant of a statutory right to counsel is reviewed for prejudice under the standard established in *People v. Watson* (1956) 46 Cal.2d 818, requiring reversal only if it is reasonably probable that the defendant would have obtained a more favorable result had the error not occurred. (*In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252.) There is no constitutional right to counsel on a Section 1170.95 petition. (See *People v. Frazier* (2020) 55 Cal.App.5th 858, 865 ["the Sixth Amendment right to counsel at critical stages of a criminal proceeding through sentencing does not apply to postjudgment collateral challenges [citations], including statutory petitions seeking a more ameliorative sentence"]; *People v. Perez* (2020) 54 Cal.App.5th 896, 782-783 [SB 1437 "is not subject to a Sixth Amendment analysis"]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 [same].)[3]

---

[3]    Accordingly, we reject Castro's contention that a trial court's error in failing to appoint counsel for a Section 1170.95 *(Fn. is continued on the next page.)*

**B.** *Analysis*

We need not decide whether the trial court erred by failing to appoint counsel for Castro and allowing him to file a reply to the People's response. Any such error was harmless, as there is no reasonable probability that had Castro filed a reply with the assistance of counsel, he would have made a prime facie showing of entitlement to relief under Section 1170.95. (See *In re Melvin A.*, *supra*, 82 Cal.App.4th at 1252.) The People submitted the jury instructions given at Castro's trial, which omitted any instruction on the felony murder rule or the natural and probable consequences doctrine -- the only two theories of murder liability affected by SB 1437.[4] The instructions

---

petitioner, where required by the statute, is subject to either automatic reversal or review for prejudice under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18. *People v. Rouse* (2016) 245 Cal.App.4th 292, on which Castro relies, is distinguishable. There, the Court of Appeal held that a defendant who had successfully petitioned to recall his sentence, and thus had "passed the eligibility stage," was entitled to counsel at his resentencing hearing. (*Id.* at 299-300.) That holding does not support Castro's position that he had a constitutional entitlement to counsel in litigating his eligibility for relief under Section 1170.95.

[4] Castro does not dispute the authenticity of the instructions submitted by the People, which included duplicates of the three instructions submitted by Castro himself, viz., an instruction on premeditated and deliberate murder and two instructions on aiding and abetting. Neither of the aiding and abetting instructions articulated the natural and probable consequences doctrine. Instead, they stated the People were required to prove
*(Fn. is continued on the next page.)*

11

established, as a matter of law, that Castro was not convicted under the felony murder rule or the natural and probable consequences doctrine. They thereby further established, as a matter of law, that Castro is not entitled to relief under Section 1170.95. (See *Soto, supra,* 51 Cal.App.5th at 1050, 1055-1059, rev.gr. [trial court properly denied Section 1170.95 petition without issuing order to show cause, where jury instructions, which omitted instructions on felony murder rule and natural and probable consequences doctrine, "demonstrate[d] as a matter of law that [petitioner] could not make a prima facie showing"].)[5] Accordingly, Castro was not prejudiced by the absence of an opportunity to file a reply with the assistance of counsel. (See *People v. Edwards* (2020) 48 Cal.App.5th 666, 674-675, review granted July 8, 2020, S262481 [any error in trial

---

that the aider and abettor knew the perpetrator intended to commit "the crime" charged, and that he intended to aid and abet "the crime."

[5]  Castro fails to suggest any argument he might have made, with the assistance of appointed counsel, in the face of the jury instructions. He merely implies that appointed counsel might have objected to the trial court's reliance on statements in our prior opinion. But even had the court sustained such an objection, the jury instructions would have conclusively refuted Castro's claim to relief. (See *Soto, supra,* 51 Cal.App.5th at 1055, rev.gr. ["regardless of the trial court's reliance on the facts in [Court of Appeal's] prior opinion to explain how the malice element of murder may have been satisfied at [petitioner's] trial, the jury instructions themselves demonstrate[d] as a matter of law that [petitioner] could not make a prima facie showing"].)

court's failing to appoint counsel or receive briefing before denying Section 1170.95 petition was "harmless under any standard of review," where "a review of the readily available record of conviction (charging information and jury instructions) show[ed petitioner] *could not* meet the statutory prerequisites"]; cf. *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899-910, review granted August 12, 2020, S263219 [affirming summary denial of Section 1170.95 petition at first prima facie review stage, reasoning, in part, "The court's ruling turned on one simple, easily ascertainable, and undisputed fact: [petitioner] was the actual killer. It is unclear how appointed counsel could have assisted [petitioner] in any meaningful way"].)

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**


MANELLA, P. J.


We concur:


COLLINS, J.


CURREY, J.